UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLEGS KOZACENKO, | No. 2:12-cv-2196 MCE DAD |
| Plaintiff, | |
| v. | ORDER |
| CALIFORNIA HIGHWAY PATROL OFFICER ANDREW P. MURRILL, et al., | |
| Defendants. | |

    This matter came before the court on June 13, 2014, for hearing of plaintiff's motion to compel production of a California Highway Patrol Form 268 ("Form 268") that was completed with respect to the incident at issue in this action. Attorney Stewart Katz appeared on behalf of the plaintiff. Deputy Attorney General Alberto L. Gonzalez and Deputy Attorney General Neli N. Palma appeared on behalf of the defendants. At the conclusion of the hearing, the undersigned took the motion under submission and received a copy of the Form 268 at issue for in camera review.

    On June 16, 2014, the undersigned issued an order ordering counsel for defendants to advise the court of the date upon which the Office of the Attorney General first received the Form 268 which had been submitted to the court for in camera review. On June 23, 2014, counsel for defendants filed a response to that order. (Dkt. No. 53.)

1

ANALYSIS

Defendants assert that the California Highway Patrol's ("CHP") procedures require an officer to complete a Form 268 "to report incidents of potential civil litigation arising from the activities of its personnel to its attorneys and risk managers and in order to receive legal direction . . . ." (Defs.' Opp'n (Dkt. No. 47) at 5.)  In this regard, they note that "Chapter 8, of Highway Patrol Manual 11.1, requires officers in the field to forward the completed 268 to the ORM [Office of Risk Management] within 48 hours of a reportable incident." (Id.)  According to defendants, the ORM then forwards the Form 268 to the Office of the Attorney General. (Id.) Defendants argue that Form 268 "serves as the attorney-client communication from CHP officers to their attorneys," and, therefore, it is protected from disclosure by the attorney-client privilege. (Id. at 2.)

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (quoting United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)). See also United States v. Bergonzi, 216 F.R.D. 487, 493 (N.D. Cal. 2003) ("The party asserting the privilege must make a prima facie showing the privilege protects the information the party intends to withhold."). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." Bauer, 132 F.3d at 507 (quoting United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002)).

An eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting Ruehle, 583 F.3rd at 607). "The party asserting the privilege bears the burden of proving each essential element." Ruehle, 583 F.3d at 608.

/////

2

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (internal citations omitted). "[T]here is general agreement that the protection of the privilege applies only if the primary or predominate purpose of the attorney-client consultations is to seek legal advice or assistance." United States v. Salyer, 853 F.Supp.2d 1014, 1018 (E.D. Cal. 2012). See also In re County of Erie, 473 F.3d 413, 420-21 (2d Cir. 2007) ("We consider whether the predominant purpose of the communication is to render or solicit legal advice . . . . The predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another; it should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer."); North Pacifica, LLC v. City of Pacifica, 274 F.Supp.2d 1118, 1127 (N.D. Cal. 2003) ("In general, legal advice is implicated if the nonlegal aspects of the consultation are integral to the legal assistance given and the legal assistance is the primary purpose of the consultation."). "In the context of the attorney-client privilege, 'legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.'" Koumoulis v. Independent Financial Marketing Group, Inc., 295 F.R.D. 28, 37 (E.D. N.Y. 2013) (quoting Erie, 473 F.3d at 419)).

The history surrounding the preparation of the Form 268 at issue in this case is significantly different than that described by CHP's official policy as discussed above. In this case, the use of force by law enforcement officers against plaintiff occurred on September 2, 2011. The first person to complete the Form 268 was not one of the CHP officers involved in the use of force, but was instead Sergeant Kevin Pierce, also a named defendant in this action, who completed the Supervisory Review section of the form on September 3, 2011. Thereafter, Officer Andrew Murrill, also a named defendant in this action, completed the Incident Narrative section of the form on September 7, 2011, five days after the incident and well past the 48-hour deadline for the forwarding of the form to the CHP's Office of Risk Management provided by the CHP policy set out above.

1    Moreover, the information provided by Sergeant Pierce and Officer Murrill is simply their

2 version of the events that occurred involving other CHP officers and plaintiff. There is no request

3 for, or discussion of, legal advice in the sections of the form completed by them. Indeed, the

4 Form 268 provides a boxes allowing for an indication if "CHP COUNSEL [was] NOTIFIED." In

5 the provided response area there is a box checked that reads "No." The Form 268 in this case

6 also reflects that an internal investigation was not completed regarding the incident in question.

7    Four months later, on January 11, 2012, the Form 268 was signed by Lieutenant John

8 Arrabit, also a named defendant in this action. On January 23, 2012, Division Commander

9 Kenneth Hill, also a defendant in this action, signed the Form 268. The signatures of defendants

10 Arrabit and Hill appear in the section of the form designated for "Approvals." Thereafter, the

11 Form 268 was finally received by the Office of Risk Management on February 3, 2012, as

12 evidenced by a stamp on the front of the form, some five months after the use of force incident at

13 issue in this action occurred.

14    According to counsel for the defendants, plaintiff's file with the Office of the Attorney

15 General ("AGO") contains two copies of the Form 268 at issue here and "[t]he first date of receipt

16 of the Form 268 is unknown." (Dkt. No. 53 at 2.) Defense counsel asserts that one copy of the

17 Form 268 found in the AGO's file bears the stamp of the Office of Risk Management dated

18 February 3, 2012, and that copy of the form was "sent to the AGO on December 12, 2012," after

19 plaintiff filed the complaint in this action. (Id. at 2-3.)

20    The other copy of the Form 268 in the AGO's file does not bear a stamp from the Office

21 of Risk Management which, defense counsel asserts, "indicates the AGO received a Form 268

22 independent of the CHP's Office of Risk Management prior to the filing of the present action."[1]

23 (Id. at 2.) In this regard, defense counsel asserts that "[t]he AGO, through its Government Claims

24 Unit (GCU), during the time in question, routinely received the Form 268 by U.S. mail or

25 /////

---

[1] Although it appears possible that the AGO received the unstamped copy of the Form 268 prior to the filing of this civil rights action, because the AGO has no records for the receipt of that copy, the most that can be said with certainty is that "[t]he first date of receipt of the Form 268 is unknown." (Dkt. No. 53 at 2.)

1 interagency mail from the California Highway Patrol."[2] (Id.)  In any event, because the form
2 itself was not completed by CHP until January 23, 2012, when Commander Hill signed his
3 approval, it is clear that the AGO could not have received the Form 268 prior to January 23, 2012,
4 over four month after the use of force incident at issue.[3]

5       Thus, the court has been presented with a document that, contrary to CHP's official
6 policy, was not finally completed by the defendants until over four months after the use of force
7 incident involving plaintiff.  The document explicitly states that CHP's counsel, which also serves
8 as counsel for the defendants in this case, was not notified of the incident at the time and did not
9 even receive a copy of the form until sometime between January 23, 2012 and December 12,
10 2012.  Within that time period, counsel for defendants is unable to determine when the AGO first
11 received the document, let alone when it was first reviewed.  Moreover, the document itself does
12 not explicitly seek legal advice and there has been no assertion that any legal advice was rendered
13 in response to the AGO's receipt of the form from CHP.

14       It should be noted that, according to counsel for defendants, plaintiff had already
15 submitted a claim to the Victims Compensation and Government Claims Board as of December
16 20, 2011, (Dkt. No. 23 at 2), and this civil rights action was commenced on August 23, 2012.
17 Thus, by the earliest date the AGO could have received this Form 268, January 23, 2012, plaintiff
18 had already filed a claim with the Victims Compensation and Government Claims Board.  Of
19 course, it is also possible that the AGO did not receive this form until December 12, 2012, after
20 plaintiff had already commenced this civil rights action.
21 /////

---

[2] To recap, after the court's inquiry revealed that the Form 268 which traveled to the AGO through the procedure outlined by defense counsel in opposing the motion to compel did not reach the AGO until after this litigation had been commenced, it was for the first time reported that a second copy of the form may have been delivered to the AGO through another route, although there is apparently little ability to track that routing or receipt of that second copy by the AGO.  If it continues to be the AGO's position that these forms are protected by the attorney-client privilege, hopefully, the transmittal of the Form 268 will be more closely tracked and catalogued in the future.

[3] This is consistent with defense counsel's assertion that "[a]s of January 6, 2012, the GCU found that a Form 268 had not yet been received by the AGO."  (Dkt. No. 53 at 2.)

Under these circumstances, the court cannot find that defendants have met their burden of establishing the essential elements of the attorney-client privilege.[4] As another Magistrate Judge of this court has observed under somewhat similar circumstances:

> It is clear that these incident reports are routinely prepared by employees after an accident in a Kohl's store in the ordinary course of business and pursuant to corporate policy, and that they contain essentially factual information. According to defendant's own policies, the dominant purpose of these statements, independently prepared by store employees, is to prevent recurrence and make the workplace safer–not to communicate information to or seek advice from defendant's attorneys. The mere fact that these statements may ultimately be forwarded to defendant's in-house counsel (or outside counsel), for example when litigation ensues, does not transform them into privileged documents.

Fisher v. Kohl's Dept. Stores, Inc., No. 2:11-cv-3396 JAM GGH, 2012 WL 2377200, at *4 (E.D. Cal. June 22, 2012). See also Fisher v. United States, 425 U.S. 391, 403-04 (1976) ("This Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice."); Koumoulis, 295 F.R.D. at 37 ("[i]nvestigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel"); U.S. Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 164 (E.D. N.Y. 1994) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a "cc" to in-house counsel."); cf. Upjohn Co. v. United States, 449 U.S. 383, (1981) (questionnaires administered as part of a corporate counsel's internal investigation into actions taken by the corporation's employees for purposes of providing legal advice to the corporation were protected by the attorney-client privilege); Shaffer v. American Medical Ass'n, 662 F.3d 439, 446 (7th Cir. 2011) ("The communication was made in confidence and to an attorney. Lynch created the memorandum for the sole purpose of meeting with in-

---

[4] Although the undersigned has doubts as to whether the attorney-client privilege would protect the Form 268 from disclosure even if the form is generated and routed in conformity with CHP's official policy, in light of the fact that the form at issue here was clearly not prepared and submitted in compliance with the terms of that policy in significant respects, the undersigned's ruling is limited to the document at issue in this action.

house counsel . . . . Lynch created the document alone, did not discuss it with anyone else, and gave the memorandum only to [in house counsel] in a meeting where only the two were present. Lynch therefore produced the memorandum in confidence to an attorney.").

## CONCLUSION

Upon consideration of the arguments on file and at the hearing, and for the reasons set forth above and on the record at the hearing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel production of Form 268 (Dkt. No. 45) is granted;

2. Within seven days of the date of this order defendants shall produce to plaintiff a copy of the Form 268 submitted to the court for in camera review; and

3. Production of the Form 268 shall be subject to a stipulated protective order.

Dated: July 3, 2014

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.civil\kozacenko2196.form268.ord

7